**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SABRINA FLOWERS, | ) | No. 08 C 449 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge George M. Marovich |
| | ) | |
| SOUTH WESTERN MOTOR SALES, INC. | ) | |
| d/b/a TOYOTA SCION ON WESTERN and | ) | |
| SANTANDER CONSUMER USA INC. d/b/a | ) | |
| DRIVE FINANCIAL SERVICES | ) | |
| | ) | JURY DEMANDED |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff went to defendant South Western Motor Sales, Inc.("Toyota Scion") in order to inquire about buying a car on May 27, 2007.  Plaintiff chose a car she liked, and submitted an application for credit to Toyota Scion.  Defendant asked her to include a paystub that showed her income in order to bolster the application.  Plaintiff took the car home, but was obligated to return it if defendants could not obtain credit.  This is known as a "spot delivery."

In its effort to make the sale, defendant altered the amount of monthly income on plaintiff's paystub to make it look like plaintiff made more money than she did, and sent the application to defendant Drive Financial Services, representing that plaintiff made more money than she actually did.  When Drive Financial Services called plaintiff's work to verify the false paystub, plaintiff's employer suspended plaintiff from her job for suspected dishonesty.  When plaintiff returned the car, defendant refused to return the security deposit, but later did so.

Plaintiff thus filed suit against South Western Motor Sales, Inc. for (1) consumer fraud relating to the forged paystub, (2) the Equal Credit Opportunity Act, for denying her credit without providing reasons why, (3) negligence arising out defendant's breached duty to provide

plaintiff with reasons why her credit was denied, and (4) consumer fraud arising out to failure consumer fraud failing to immediately return the security deposit.

## I.    Facts Alleged in the Amended Complaint.

Plaintiff, Sabrina Flowers is an individual who reside in the Northern District of Illinois. (Amd. Cmplt ¶ 2) Defendant South Western Motor Sales, Inc. d/b/a  Toyota Scion on Western is an Illinois corporation that is in the business of selling automobiles.  Its registered agent is located at 6941 S. Western Ave., Chicago Illinois. (Amd. Cmplt ¶ 3)  Former defendant Santander Consumer USA Inc. d/b/a Drive Financial Services is an Illinois corporation that is in the business of financing automobiles.  Its registered agent is CT Corporation at 208 S. LaSalle, Ste. 814, Chicago Illinois. (Amd. Cmplt ¶ 4)

On May 28, 2007, Ms. Flowers executed a retail installment contract for a used 2005 Mitsubishi Galant.  (Amd. Cmplt ¶ 6) Aaron Avant who identified himself as the finance manager of Toyota Scion informed Ms. Flowers that defendant would be able to obtain financing for her. (Amd. Cmplt ¶ 7)  The executed retail installment contract provided that Drive Financial Services would provide financing for the 2005 Mitsubishi Galant.  (Amd. Cmplt ¶ 8) As part of the financing application, Ms. Flowers provided Mr. Avant and Toyota Scion with her paycheck stub.  (Amd. Cmplt ¶ 9)

Drive Financial subsequently contacted Ms. Flowers' employer  requesting verification of her income.  (Amd. Cmplt ¶ 10)  Subsequently on July 12, 2007, plaintiff was called into the Human Resource Department of her employer.  (Amd. Cmplt ¶ 11)  Ms. Flowers' employer received documentation from Drive Financial showing a forged pay stub showing an exaggerated income of $64,000.00. (Amd. Cmplt ¶ 12)

Ms. Flowers advised her employer that she submitted to the Dealer a copy of the same pay stub provided to her and that she had not forged that document. (Amd. Cmplt ¶ 13)

Ms. Flowers was then placed on unpaid administrative leave and received written notice of her predisciplinary meeting, which states in part that she violated the Code of Conduct and that "Honesty and integrity required to work with people with disabilities. Falsifying documentation is unacceptable and will not be tolerated." (Amd. Cmplt ¶ 14)

On July 16, 2007, Ms. Flowers contacted Drive Financial and informed it that her pay stub was altered by the dealership. (Amd. Cmplt ¶ 15) Also on July 16, 2007, plaintiff filed a police report as to the forged pay stub. (Amd. Cmplt ¶ 16)

Drive Financial subsequently returned the fraudulent automobile financing contract to the dealership. (Amd. Cmplt ¶ 17) The exact identity of the person at defendant who forged the documents is in the exclusive control of defendant. On information and belief, plaintiff believes that Aaron Avant forged the finance documents as he was given exclusive control of plaintiff's documents and he promised that he would obtain financing with Drive Financial. (Amd. Cmplt ¶ 18)

Subsequently, Michelle Wysogleel from Toyota Scion contacted plaintiff to sign new documents to resolve the situation. (Amd. Cmplt ¶ 19) Upon arriving at the dealership, Michelle Wysogeel insisted that plaintiff sign a new contract and would not let her leave with the vehicle until she did. (Amd. Cmplt ¶ 20) Ms. Flowers then attempted to return her vehicle to the dealership, but Toyota Scion would not return her entire down payment as required by the Consumer Fraud Act. (Amd. Cmplt ¶ 21) Plaintiff called the police who instructed the dealership give plaintiff the car back so she could return home. (Amd. Cmplt ¶ 22) Subsequently, the dealership agreed to

take back the vehicle, but it then attempted to deduct $350 from the down payment since it asserted that plaintiff left with the vehicle and it had to pay for insurance. (Amd. Cmplt ¶ 23) Ms. Flowers then retained counsel, but defendant still refused to refund the entire down payment as memorialized by the letter from Ms. Wysogleel. (Amd. Cmplt ¶ 24) Eventually, defendant agreed to return the entire down payment. (Amd. Cmplt ¶ 25)

As a result of the forgery by the dealership, plaintiff was under the suspicion of forgery, her reputation was damaged, she was put on administrative leave from work, she suffered extreme emotional distress and fear that she would lose her job. (Amd. Cmplt ¶ 26) The actions complained of herein are the acts of employees of defendant within the scope of their employment at Toyota Scion. As such, Toyota Scion is liable for the actions of its employees and managers. (Amd. Cmplt ¶ 27)

## II.    Standard of Review.

In *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Supreme Court reemphasized the extremely liberal pleading standard of the Federal Rules of Civil Procedure, noting that a dismissal of claims is only appropriate in the rarest circumstances. A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

The plaintiff, but not the defendant, is entitled to set forth what set of facts consistent with the allegations of the complaint would sustain a claim. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion . . . ." *Cushing v. City of Chicago*, 3 F.3d 1156, 1160 (7th Cir.

4

1993).

        In federal court "one pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics." *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006).

        Rule 8(a)(2) still requires nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." The recent Supreme Court case *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), has not changed this: "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

## III.    Equal Opportunity Credit Act

        The ECOA was enacted in 1974 to broadly prohibit discrimination in credit transactions. See *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983). It was amended in 1976 to require creditors to furnish to borrowers whose credit was denied a written explanation of the specific reasons why an adverse action was taken against a consumer. *Id.*; 15 U.S.C. §§ 1691(d)(2) and (3) ("A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.").

        Failure by the creditor to send such a notice is a violation, regardless of whether there is any allegation of discrimination, and a successful plaintiff may recover up to $10,000 punitive damages, plus actual damages and fees and costs. 15 U.S.C. § 1691e(a)-(d).

        Defendant contends that it is not a "creditor" under the ECOA. The defendant car dealership in *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) made an identical argument. In rejecting defendant's assertion that it is not a "creditor," the Seventh Circuit found that there exists,

> a continuum of participation in a credit decision from no participation, to referring applicants to the decision maker, to final decision making. At some point along the

5

continuum, a party becomes a creditor for purposes of the notification requirements of the [ECOA].

*Treadway*, 362 F.3d at 980. Plaintiff alleges that defendant falls on the creditor side of this continuum.

Judge Gettleman more recently held that whether a dealership is a creditor is a factual issue to be determined at summary judgment, if appropriate, or at trial:

> Whether a car dealer such as defendant is a creditor is a fact specific question, and courts have set forth certain guidelines to aid in the determination:
>
> (1) whether the dealer sets the terms of the credit;
>
> (2) whether the dealer negotiates with the customer as to the payment terms;
>
> (3) whether the dealer receives proceeds from a portion of the interest rate; and
>
> (4) whether the dealer conducts an initial assessment of the customer's credit application to screen those that it determines not to send to a lender.
>
> *Barnette v. Brook Road Inc.*, 457 F. Supp.2d 647, 655 (E.D. Va. 2006).
>
> Whether defendant qualifies as a creditor under the ECOA when these factors are applied to its actions is a question of fact that cannot be determined on a motion to dismiss. Plaintiff has alleged that defendant is a creditor and at this stage need do no more. Accordingly, defendant's motion to dismiss Count I is denied.

*Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303, at *8-9 (N.D. Ill. May 11, 2007). Consistent and implicit in the allegations in the complaint is the fact that defendant chose the terms of the financing, and filled out the financing contract. Amend.Cmplt. ¶¶ 6-9. Toyota Scion therefore "set the terms of the deal" and "negotiated the payment terms" with plaintiff. *Id*. These are things that Toyota Scion does for every "spot delivery" deal it does. And it does a voluminous such deals just like plaintiff's's. Toyota Scion also took proceeds from the interest rate, and obviously did an initial assessment of plaintiff's credit application since it informed plaintiff she would be financed and because it improperly "bolstered" the application by fraudulently changing plaintiff's salary. Amend.Cmplt. ¶¶ 7-20. And although defendant might not change every potential borrower's

income statement in order to push financing deal through, the fact that defendant did, in fact, review plaintiff's application before sending it to a potential finance company demonstrates that this is its practice.

When Toyota Scion altered the application, it was no longer that of plaintiff. Because Toyota Scion never submitted plaintiff's true application for credit to any finance company, it "effectively became the denier of credit," *Treadway*, 362 F.3d at 975, thus making it a "creditor" and triggering a duty to tell plaintiff why her application was never submitted to any finance company.

Further, plaintiff is not required to plead any more than she did. ECOA allegations fall within Rule 8's pleading requirements. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" *S. Austin Coalition Cmty. Council v. SBC*, 274 F.3d 1168, 1171 (7th Cir. 2001). Plaintiff's allegations are sufficient. If defendant never forwarded plaintiff's application for credit to Drive Financial Services, and if it regularly does, which upon information and belief it does, plaintiff has stated a claim. Plaintiff did not need to plead anything related to whether defendant is a "creditor" to explain plaintiff's plausible theory for relief. Under Rule 8(a), the pleader need not allege the legal theory on which he relies." *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569, 581 (7th Cir. 1975). Here, plaintiff has provided more facts and explanation than necessary.[1] Plaintiff intends to prove that defendant was a "creditor" at trial or at summary judgment, but is not required to plead such specifically.

It is clear from the face of the complaint that plaintiff's ECOA claim is based on

---

[1] If this Court believes that an ECOA complaint based upon 15 U.S.C. § 1691(d) must include more specific allegations regarding whether the defendant is a creditor, plaintiff requests leave of court to add such allegations to the complaint.

defendant's failure to provide her with an "adverse action" notice. That is all the federal rules require. After all, "[w]hether defendant qualifies as a creditor under the ECOA when these factors are applied to its actions is a question of fact that cannot be determined on a motion to dismiss. *Stegvilas v. Evergreen Motors, Inc.*, 2007 U.S. Dist. LEXIS 35303, at *7-9 (N.D. Ill. May 11, 2007).

## IV.    Plaintiff Properly Pleaded Negligence.

Defendant claims that plaintiff has not properly pleaded negligence because it does not believe it had a duty to provide plaintiff with any reasons why it denied her credit. This argument is without merit. As explained above, creditors have a duty under the ECOA to applicants to explain why credit applications have been denied. Plaintiff alleges that defendant breached that duty in not providing the reasons. This Count therefore survives.

## V.    Plaintiff's Consumer Fraud Act Allegations in Counts I and IV are Distinct.

Defendant also moves to dismiss one of plaintiff's Illinois Consumer Fraud counts (there are two), arguing that the second must be dismissed because they "contain the same factual allegations and the same injury," and that the "resolution of one will be dispositive of the second." Mtn at 3. This is not the case. The two counts allege different facts, and violation of different sections of the Consumer Fraud Act.

Count I alleges violation of section 2 of the ICFA having to do with deceptive and unfair acts, generally, relating to the forged signature:

> 30. Defendant engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by forging Mr. Flowers's income verification document stating her income was substantially more than the income stated on the original pay stub.

> 31. Toyota Scion intended that Ms. Flowers rely on its actions and purposely concealed these actions from Plaintiff.

> 32. Defendant engaged in such conduct in the course of trade and commerce.

33. As a result of the forgery, plaintiff was under the suspicion of forgery, her reputation was damaged, she was put on administrative leave from work, suffered extreme emotional distress and fear that she would lose her job.

Whereas Count IV alleges violation of section 2C of the Consumer Fraud Act, which specifically proscribes refusal to return a down payment when the dealership is unable to obtain financing with respect to a "spot delivery" finance agreement:

46. Section 2C of the Illinois Consumer Fraud Act, 815 ILCS 505/2, requires a dealership to return to the consumer all items paid towards a vehicle, including a return of the down payment or trade in, on rejection of a credit application.

47. It was not until plaintiff retained an attorney that Toyota Scion offered to return her full down payment, but at that time plaintiff had incurred legal expenses.

Although the facts relating to both Counts arise out of the same transaction, the fraudulent facts are different, and will require independent proof at trial. And, while the right to actual and punitive damages for these violations arise out of the same section of the Consumer Fraud Act, they will not necessarily be identical.

As alleged in paragraph 27, "As a result of the forgery by the dealership, plaintiff was under the suspicion of forgery, her reputation was damaged, she was put on administrative leave from work, she suffered extreme emotional distress and fear that she would lose her job." Those damages have to do with Count I.

The failure to return the down payment (Count IV) caused plaintiff time and inconvenience, as well as emotional distress. These are separate and distinct damages from those alleged in Count I.

Count I also alleges that defendant's actions, as a whole, were unfair, and there may also be damages that arise out of the totality of the unfairness of the circumstances. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775 N.E.2d 951 (2002) ("Recovery may be had for unfair as well as deceptive conduct."); *Centerline Equipment Corp. V. Banner Personnel Service,*

*Inc.*,  No. 07 C 1611, 2008 U.S. Dist. LEXIS 15946, at *22 (N.D.Ill. March 3, 2008) (allegations of unfairness are subject to Rule 8's pleading requirements, rather than Rule 9(b)).  Plaintiff does <u>not</u> contend that she may have double recovery, only that she is entitled to prove damages for the violations alleged.

    Plaintiff alleged the facts in Counts I and IV separately not only because (1) there are two applicable sections of the Consumer Fraud Act; (2) the facts surrounding the violations are different; and (3) the injuries themselves are different, but also because (4) plaintiff believed this was the most efficient and effective way of explaining her case. The two counts state independent claims for relief, and neither should be dismissed for failure to state a claim.

## **CONCLUSION**

    For the foregoing reasons, defendant's motion to dismiss should be denied.

       Respectfully submitted,

       /s/Keith J. Keogh

Keith J. Keogh
Alexander H. Burke
LAW OFFICES OF KEITH J. KEOGH, LTD.
227 W. Monroe Street, Suite 2000
Chicago, Il 60606
312.726.1092
312.726.1093 (fax)

## CERTIFICATE OF SERVICE

I, Keith J. Keogh, hereby certify that on June 3, 2008, I served the foregoing to counsel of record listed above via the ECF system for the Northern District of Illinois:

/s/Keith J. Keogh